[No. 33820. Department Two. May 23, 1957.]

THE STATE OF WASHINGTON, *Respondent*, v. MERVIN G. WALLIS, *Appellant*.[1]

*Victor J. Felice*, for appellant.

*Hugh H. Evans* and *William J. Grant*, for respondent.

FOSTER, J.—" 'Perjury requires a higher measure of proof than any other crime known to the law, treason alone excepted.' " *People v. O'Donnell*, 132 Cal. App. (2d) 840, 845, 283 P. (2d) 714.

From a conviction of perjury in the first degree for falsely testifying in the trial of one DiLuzio charged with selling beer to minors, this appeal is taken. The charging part of the information is " ' . . . that he had never heard the said Romeo DiLuzio, Jr., make any statement or do any act indicating knowledge of any sale of intoxicating liquor to the said Leo Podd . . . ' " at the time and place mentioned.

[1] Reported in 311 P. (2d) 659.

The jury returned a verdict of guilty, and within due time the appellant moved for a new trial and in arrest of judgment.

This conviction can only be sustained if the state proved by direct testimony of at least one competent witness and corroborating circumstances, that the testimony of the accused in the trial of DiLuzio that he had never heard DiLuzio make any statement, or do any act, indicating knowledge of the sale of beer to Leo Podd on January 7, 1956, is false.

Many witnesses testified to contradictory oral statments by the appellant; and his own affidavit, the pertinent part of which is set out in the margin,[2] which was admitted in evidence without objection, was at variance with his testimony in DiLuzio's trial, but there is no direct evidence that appellant had the knowledge which he denied in his testimony at DeLuzio's trial. In other words, the state failed to prove by direct and independent evidence that appellant heard statements by DiLuzio or saw acts by him indicating the prohibited sale.

---

[2]"That he was born September 26, 1939, in Spokane, Washington, thus he is 16 years old. Further, that he resides 1227 East Rockwell Avenue, Spokane, Washington, with his parents, Mr. and Mrs. G. W. Wallis.

"That he was working at DiLuzio's Grocery, located at 2829 North Market Street, Spokane, on January 7, 1956, when the matter came up about selling beer to Leo Podd, and heard the statement made by Romeo DiLuzio that he would sell some beer to Podd. He further observed clerk Charles Riddle place $17.00 in the till in the afternoon for the beer, but at that time did not see it rung up. Then after closing time he heard Mr. DiLuzio figure up the amount for four and three quarters cases of beer in his conversation with Leo Podd. He then saw the full amount of the sale, which amounted to about $18.70, rung up on the cash register by Charles Riddle, age 16 years. He then assisted Leo carry the beer from the walkin box to the car. After the city and state officers were at the store questioning Mr. DiLuzio about this incident, that same evening the latter stated to him that he did not care what happened to any of them, that he would never tell that he sold the beer. That he did not pay any money towards the beer.

"That he has read the foregoing statements and makes the same freely and voluntarily, without duress, compulsion, offer of reward or immunity and states that the same is true."

A brief summary of the case against DiLuzio is necessary.

Money was pooled by a group of teen-aged boys to buy beer for a party to be held in the home of one of them during his parents' absence. Appellant, however, was not in that group nor did he attend the party which was held as planned. During its progress police arrived and took all of the boys into custody.

Three days after the party, appellant signed an affidavit purporting to detail his knowledge of the sale of beer by DiLuzio, but upon DiLuzio's trial in the police court, he repudiated the affidavit on the witness stand.

Appellant, Larry Crisp, and Leo Podd, all teen-age boys, worked in the Market Street Food Center in Spokane. Podd and Crisp were called as witnesses against appellant.

Podd testified that DiLuzio sold him the beer and that the accused carried beer from the store to the floor of the refrigerator, and thereafter assisted in carrying it to Podd's car; but the accused himself testified to this at DiLuzio's trial, so there is nothing false about that. There is nothing in his testimony connecting the accused with anything charged in the information.

The testimony of the other witness, Larry Crisp, is much the same, except he testified that DiLuzio said " 'Now if you boys get caught tonight and are asked "Where did you get this beer" ' " whereupon an unidentified individual exclaimed " 'From a guy down Skid Row' " but failed to say any part of that conversation was overheard by the accused. He did say, however, that during such conversation "We was all there," but did not say where the accused was, nor that he heard it. Neither did the prosecuting attorney inquire respecting such vital matters.

Significantly, the size of the store is not shown, and the record is silent as to where the accused was during the conversation. For aught that appears in the record, the appellant may have been any place in the store. The record is completely silent as to whether the accused heard the conversation in question or even that he was in a place where it could be heard.

The prosecuting attorney and his deputy are to be commended for their candor; they make no claim that there is direct or independent evidence or that the accused heard this conversation or any part of it. In fact, it is stated in the state's brief:

" . . . In this case, proof of the falsity of appellant's testimony by so-called 'direct and positive testimony' is impossible, for how could any person testify categorically that the appellant had seen something or that he had heard something?"

There is a total and complete lack of any direct or independent proof that anything to which the appellant testified was false.

With respect to the proofs necessary to sustain a conviction, the common law put perjury and treason in a class by themselves. So firm was the rule with respect to treason, that it was written into our constitution[3] no person could be convicted of treason except upon the testimony of two witnesses to the same overt act or confession in open court.

The supreme court of the United States in *Weiler v. United States*, 323 U. S. 606, 89 L. Ed. 495, 65 S. Ct. 548, said: "The special rule which bars conviction for perjury solely upon the evidence of a single witness is deeply rooted in past centuries." The statutes of this state provide the common law of England shall be the rule of decision in all of the courts of the state unless the constitution or statutes provide otherwise.[4] With respect to the crime of perjury, they do not.

In 1905, this court in *State v. Rutledge*, 37 Wash. 523, 79 Pac. 1123, approved the following statement of the proof necessary to convict of perjury:

" 'There must be the direct testimony of at least one credible witness, and that testimony to be sufficient must be positive and directly contradictory of the defendant's oath; in addition to such testimony, there must be either another such witness or corroborating circumstances established by independent evidence, and of such a character as clearly to

---

[3]Washington State Constitution, Art. I, § 27.
[4]Rem. Rev. Stat., § 143 [*cf.* RCW 4.04.010].

turn the scale and overcome the oath of the defendant and the legal presumption of his innocence. Otherwise the defendant must be acquitted.' "

Eleven years ago, the supreme court of the United States in *Weiler v. United States, supra,* reached the same conclusion and said the rule was almost universal in both state and Federal courts.[5] Such is the law.[6]

We are pressed by the prosecuting attorney to abandon the rule. The solicitor general likewise urged the United States supreme court to abandon it, but that court dismissed the argument in the *Weiler* case with these words:

" 'The rule has long prevailed, and no enactment in derogation of it has come to our attention. The absence of such legislation indicates that it is sound and has been found satisfactory in practice.' "

No substantial reason has been advanced why our decision should now be otherwise. Any change must come from the legislative branch of the government.

■ There is no independent proof of the *corpus delicti;* that is, the only proof of the falsity of the appellant's testimony in DiLuzio's trial in the police court is testimony respecting contradictory statements and the appellant's affidavit.[7] Contradictory statements, sworn or unsworn, are not

[5]The conviction in *Weiler v. United States,* 323 U. S. 606, 607, 89 L. Ed. 495, 65 S. Ct. 548, was reversed for refusing the following approved instruction:

" 'The Government must establish the falsity of the statement alleged to have been made by the defendant under oath, by the testimony of two independent witnesses or one witness and corroborating circumstances. Unless that has been done, you must find [the] defendant not guilty.' "

[6]Up to 1926 the cases so holding are collected in *Hammer v. United States,* 271 U. S. 620, 626, 70 L. Ed. 1118, 46 S. Ct. 603. See, also, 70 C. J. S. 535, § 68.

[7]"Previous contradictory statements, made with or without oath, may be very important evidence, in connection with other circumstances, against the accused; but, no matter by how many witnesses the different and conflicting statements may be proved, this is not corroborative proof of the *corpus delicti.* The offense charged is the willfully false denial of knowledge of certain criminating facts. . . . Corroboration should be of such a nature as would tend to prove the existence of such criminating facts, and the defendant's knowledge of their existence. This

direct evidence of the falsity of the testimony which the law requires. Indeed, it may be said that while such evidence creates a strong probability of the appellant's guilt, or even proof beyond a reasonable doubt, the law still requires direct and independent evidence of the falsity of the testimony in addition. It is impossible to say whether the affidavit and the contradictory statements are true or whether the testimony is true. The affidavit is, therefore, insufficient to sustain the conviction. *Tribble v. State*, 210 Miss. 604, 50 So. (2d) 148; *Smyth v. Godwin*, 188 Va. 753, 51 S. E. (2d) 230, 238; *State v. Woolley*, 109 Vt. 53, 62, 192 Atl. 1; *People v. Burcham*, 69 Cal. App. 614, 232 Pac. 149; *State v. Lupton*, 102 N. J. L. 530, 133 Atl. 861; *McWhorter v. United States* (C. C. A. 5th), 193 F. (2d) 982; *Shoemaker v. State*, 29 Okla. Crim. 184, 233 Pac. 489; *People v. Glenn*, 294 Ill. 333, 128 N. E. 532; *State v. Carter*, 315 Mo. 215, 285 S. W. 971; *State v. Gobin*, 134 Kan. 532, 7 P. (2d) 57; *Fotie v. United States*, 137 F. (2d) 831; 70 C. J. S. 534, § 37; 41 Am. Jur. 36, § 66.

The testimony that the appellant said he heard statements and observed acts of DiLuzio indicating knowledge of the sale of beer to Podd, is no different. There is no proof as to which statement is true.[8] The falsity of appellant's testimony must be proved by independent evidence and contradictory oral statements will not suffice. *People v. Kennedy*, 221 Mich. 1, 190 N. W. 749; *State v. Phillips*, 172 Kan. 505, 241 P. (2d) 503; *Clayton v. United States*, 284 Fed. 537; *People v. Miller*, 261 Mich. 598, 246 N. W. 678; *Richardson*

would tend to prove the alleged first testimony was true, and the latter false. This would be corroboration of the truth of the testimony of one witness—his alleged testimony before the grand jury; and if sufficiently strong and convincing, would authorize the jury to find the falsity of the second testimony, and to convict the defendant." *Peterson v. State*, 74 Ala. 34, (1883).

[8]"Proof of the contradictory statements deposed by the accused on the second trial was admissible as a circumstance affecting the falsity of the evidence on the first trial. However, it mattered not how many witnesses testified to these facts, it could not be the equivalent of corroborative proof of the corpus delicti of the offense charged in the indictment. 48 C. J., Perjury, Sec. 174, p. 905." *Williams v. State*, 34 Ala. App. 462, 41 So. (2d) 605.

*v. State,* 45 Ohio App. 46, 186 N. E. 510; *Billingsley v. State,* 49 Tex. Crim. 620, 95 S. W. 520; *Thompson v. State,* 40 Okla. Crim. 251, 268 Pac. 314.

The case against the appellant is that he is charged with testifying falsely in saying he had heard no words by the accused DiLuzio or saw no acts by him indicating the unlawful sale of beer to a minor. The state proved only that on several occasions appellant stated he had observed such acts by DiLuzio and had heard such words spoken by him. It did not prove by *direct and independent* evidence that the accused had heard such words spoken by DiLuzio or had observed acts by him indicating guilty knowledge. Without this proof the state's case failed.

The judgment is reversed and the action dismissed.

HILL, C. J., SCHWELLENBACH, DONWORTH, and ROSELLINI, JJ., concur.